**Baird C. BRITTINGHAM and Gretchen Brittingham, his wife, et al., Plaintiffs,**

v.

**Henry B. ROBERTSON, Defendant.**

Court of Chancery of Delaware, New Castle.

May 13, 1971.

William Prickett, of Prickett, Ward, Burt & Sanders, Wilmington, for plaintiffs.

David N. Williams and H. Alfred Tarrant, Jr., of Cooch & Taylor, Wilmington, for defendant.

DUFFY, Chancellor.

This is the decision after final hearing on an application for a permanent injunction prohibiting defendant from erecting a chain link fence along some 1,100 feet of

boundary line which divides the properties of the parties.

## A.

Henry B. Robertson (defendant) owns about 42 acres of land near Centerville; close to center of the tract there is a house in which he has lived for many years. In the 1950's members of the Brittingham family bought lands which border on two sides of defendant's property. In 1961 Baird C. Brittingham and his wife (plaintiffs) built a home which at closest point is about 40 feet from their common boundary with defendant; Mr. Robertson was aware that it was being built. For many years he was in the habit of regularly walking his land, including areas near plaintiffs' boundary. Over the years the boundary has not been fenced, the families lived in peace with each other.

In 1945 Mr. Roberston was retired from business for medical reasons and he has not since been regularly employed. In April 1970 he had a cerebral stroke which has left him with right side impairment. He moves only with a wheelchair or walker. Because of his condition plaintiffs were unable to depose him and he has not participated directly in these proceedings. However, Mrs. Robertson testified at trial.

## B.

I first consider plaintiffs' argument that defendant is an infirm person within the meaning of 12 Del.C. § 3914 and Chancery Rule 175 and, therefore, the Court should appoint a guardian for him.[1] Defendant argues, strongly, that this contention should be rejected out of hand.

The question is raised in a most unusual context but the law is clear and I am satisfied that its application here is not in doubt.

■ A person for whom the appointment of a guardian is sought under the statute is presumed able to manage and care for his property, and a party who asks for the appointment must prove inability to do so by a preponderance of the evidence. In re Conner, Del.Ch., 226 A.2d 126 (1967). The statute, of course, is in the conjunctive: there must be proof of (a) advanced age or mental infirmity or physical incapability sufficient to cause inability to properly manage property; and (b) a resulting danger of loss of property from dissipation or being victimized by designing persons. Medical evidence is of significant importance in determining whether or not the statutory grounds have been proved.

Here, the only medical evidence available was given by Dr. Herbert M. Baganz who has attended Mr. Robertson since 1955; he testified, in short, that Mr. Robertson is perfectly competent to make his own decisions.

■ I recognize that on the guardianship issue plaintiffs are, legally speaking, at a substantial disadvantage. Because of Mr. Robertson's condition, with the absolute necessity (according to Dr. Baganz) of shielding him from unnecessary stress or tension-creating situations, plaintiffs have been limited in their discovery and have not even been able to secure an examination by a second doctor. But, like the Court, they must take defendant as they find him. And while it is certainly true that he has had, and does have, serious health problems (hypertension, stroke, gout and others) I am not persuaded that

1. 12 Del.C. § 3914 provides:
"Whenever any person not mentally ill * * * by reason of advanced age or mental infirmity or physical incapacity is unable properly to manage and care for his property, and in consequence thereof is in danger of dissipating or losing such property, or of becoming the victim of designing persons * * * next of kin * * * or * * * any other person, may file in the Court of Chancery * * * [a] petition * * * praying the Court to adjudge that such person is unable properly to manage and care for his property, and requesting the appointment of a guardian of the property of such person."
Rule 175 implements the statute.

all of this, singly or in combination, establishes a statutory basis for appointment of a property guardian. Nor do I see any need, in defendant's interest, for appointing a guardian ad litem. Both Mr. Robertson and his counsel are opposed to an appointment of any guardian for any purpose, and I regard his interest in this lawsuit as adequately protected and represented. Plaintiffs' application for appointment of a guardian will be denied.

## C.

The second significant issue in the case is plaintiffs' contention that the proposed fence, if placed along the boundary, will be a spite fence and erection should therefore be enjoined.

■ A landowner has a right to build a fence along the boundary or division line of his property, 36A C.J.S. Fences § 2; he has an inherent right to fence, or not. 35 Am.Jur.2d, Fences § 2. This is a statement of classic law and, in my view, it establishes a prima facie right in Mr. Robertson to erect the fence as he proposes to do. But the right is not absolute; this is to say that it is not unfettered or exercisable without reference to its impact upon others. On the contrary, a right to fence, like so many other species of property rights, is not exercised in a vacuum and the law is not indifferent to the imapct which that exercise may have on others. Indeed, that has traditionally been a part of the weighing process which courts have undertaken; contractual limitations are but an illustration of this, and so is the spite fence doctrine.

■ A spite fence or structure is defined as one which is of no beneficial use or pleasure to the owner, and which is erected for the purpose of annoying his neighbor. 1 Am.Jur.2d, Adjoining Landowners § 106.

Older cases, with an understandable but sometimes regrettable emphasis on property rights, gave this rule a narrow application but there is, as stated in Am.Jur.2d, "a decided tendency" to abandon the rule of earlier cases and "to adopt what is deemed to be a more just and common-sense view of the question." Accordingly,

"* * * it is now widely held that an adjoining landowner may sue for damages caused by, or may enjoin the erection or maintenance of, a spite fence or like structure erected for the sole purpose of injuring him in the lawful and beneficial use of his property." 1 Am. Jur.2d, supra.

5 Powell on Real Property, § 696 is to the same effect in discussing the "more enlightened concept" when the structure serves no useful and beneficial purpose. See also 1A Thompson on Real Property (1964), § 239.

I agree with these principles which certainly should find a home in an equity court. The question thus narrows to application, and that is determined by the facts.

Defendant intends to build a 5-foot chain-link fence around the entire property at a cost of about $20,000. There is nothing to contain within the property, it is not farmed and is certainly not "improved" along the boundary. The fence will be open, without gate, at the driveway entrance to defendant's home; it will not be "man-proof."

■ I conclude from the evidence that the only reason for placing it on plaintiffs' boundary is that defendant has a legal right to do so. Mr. Robertson stated other reasons (to keep out hunters and dogs) but they are of little probative value in determining the facts as to location and, in the absence of posting or any specifics as to annoyance from hunters or dogs, they are not persuasive. In short, I find as a fact that placing the fence on the boundary line serves no beneficial or useful purpose to defendant.

On defendant's property near the boundary the land is covered with young pine trees, second growth, weeds, honeysuckle,

woodbine, and other heavy undergrowth that climbs trees. The photographs in evidence document the condition. Collectively it is a potential fire hazard. (There is also a potential for a crown or treetop fire.) And it is not made less so by saying that it is a kind commonly found in New Castle County. Ground fires (creepers) abound in this County (defendant's expert testified they are some 99% of all fires) and control of these at the area in question, is the responsibility of a volunteer fire company located some five miles away. There have been at least two grass fires on the Robertson property, although none in the last six years.

On the boundary, defendant proposes to anchor the chain-link fence as firmly as if in concrete; there will be no gate at any place along the 1,100 feet. If a grass fire occurs on defendant's property near the boundary, access to it by the most practical route is through plaintiffs' property. The volunteer company must come from Talleyville, which is across the Brandywine River; bridges are few, traffic is often heavy. Bolt cutters would be required to cut the 2-inch mesh, 9 gauge wire. And while that can be done with relative ease, quick access to a fire is vital and the proposed fence would be a significant impediment in gaining access for both men and equipment. The proposed fence cannot be seen from the Robertson house; there is no intention to clear other than a 7-foot accessway (for building and maintenance purposes).

These facts establish a potential, not an actual danger to plaintiffs. I do not regard erection as enjoinable solely on the basis of hazard. But when all of this is put together and when there is no use or advantage to defendant to be had, in my judgment, annoyance of neighbor is inferable. As stated in 1 Am.Jur.2d, supra, § 111, the question of whether a structure is "ma-

liciously erected is to be determined rather by its character, location, and use rather than by an inquiry into the actual motive in the mind of the person erecting it." When that is done in this case the proposed fence amounts in law to a spite fence, 1 Am.Jur.2d, supra, § 106, and its erection should be enjoined.[2]

Given this result, the Court has the power to tailor relief to the needs of the case. In my view, the legitimate interest which defendant may have in fencing, and minimization of potential danger to plaintiffs can both be accommodated by requiring a reasonable setback. Accordingly, an order will be entered enjoining defendant from erecting the proposed fence closer than 100 feet to plaintiffs' boundary, on condition that plaintiffs pay the entire expense of placing and maintaining such permanent monuments as are necessary to mark the boundary.

---

2. When plaintiffs erected their house the Zoning Code of New Castle County required a 40-foot setback from side lines. The Brittingham house is about 60 feet from the boundary, the garage is less than 40 feet. There is, on these facts, a violation of the Code but I do not regard it as determinative.